Yes, Your Honor. I'm Gary Dukoff. I represent Appellant Matty Chan. I have joint issues with Mr. Osterhout, who represents Appellant John Luong, and we're going to split our time, taking five minutes each for our initial argument, reserving a couple of minutes each for a rebuttal. And Mr. Reardon, who represents a co-defendant from down below, has a completely independent issue, and he's going to bring up the rear and take up the remaining time. All right. Very good. Everybody settled? You may begin. So good morning, Your Honors. I'm hoping the Court's going to be receptive to our claims attacking mandatory minimum sentences. From my research, it seems like judges all across the spectrum, wherever their judicial philosophies may lie, are antagonistic towards them or, at a minimum, unhappy with them. And the reasons are obvious. They're not mandatory at all. They're discretionary punishments. They're discretionary because it's the prosecution that's exercising the discretion rather than the courts. They rely on a very small metric to the expense of all others, in this case the possession or the use of a firearm, in other cases possession of a certain quantity of drugs. And they shouldn't be. You're not suggesting that we're going to undo the stacking cases, are you? No. I'm not asking this Court, obviously, to undo any control. The law is the law, and we have to follow it. Exactly. The Senate. But what I am asking is that the Court look closely at congressional intent and figure out what that intent is with respect to the unique facts of this case. There's no reason to go beyond what congressional intent requires in applying the stacking of the 924C. All we have to do is just figure out what the statute means. And we've held that stacking is okay over a blistering concurrence of one of our colleagues. Okay. Again, I'm not attacking the constitutionality of 924C or its proper application in proper cases. But what I would like to concentrate on this morning is the argument about the improper linking of multiple 924C sentences to a single underlying offense. And this is Claim No. 2 in our briefs, in our joint brief. And as I was preparing for the oral argument, I was thinking there's a few building blocks upon which the argument rests, and there's really no reasonable dispute about any of them, beginning with the first block, which is that the jury found one overarching Hobbs Act conspiracy, and that was charged in Racketeering Act I. And there's no question, but the government's theory at trial was that there was one overarching Hobbs Act conspiracy. They explicitly argued it to the jury. And, in fact, it was very important for the government to secure their RICO convictions because they didn't want the jury thinking there were these ad hoc recalls. Can I get you to just back up to get me into where you're going? Sure. Your clients have been up here before. Correct. And the actual we affirmed the guilty determination. We sent it back only on a sentencing issue. Now, my reading of the record is that that determination of guilt was based on subsection C. It was a crime under subsection C. There's no question but that the first panel affirmed the convictions under 924C. Okay. So we take that, our court takes that, and we affirm it on C. We send it back having to do with the sentencing. Now, under our rule, the trial court has no jurisdiction to do anything else. Thrasher tells us that. So there's a little confusion of whether it's N or O. The briefs kept calling it O, but I could only find it labeled N. So I've been referring to it as N, subsection N. That deals with a different crime. So how can the district court have any power, any jurisdiction, to do anything other than sentence them under subsection C? And how could he, when Thrasher says you have no power to do anything else when we send these cases back, how could he ever get over into subsection N? Okay. Well, that's a different argument than the one I was wanting to talk about. I understand. But if we don't find this argument, there won't be anything else to talk about. Well, what we relied on in it. But, by the way, you don't have to answer my question. Yes. Thank you, Your Honor. We relied upon a United States v. Wegg, a district court case. Yeah. And you've got two circuits going the other way. Well, you know, I didn't see any cases presented by the government that blew us out of the water on that issue. And that case clearly held that the sentencing decisions of the district court are not bound by the charging decisions of the government. The government, in that case, secured felony convictions for a firearms dealer. And the court sentenced under the misdemeanor provision. I found that district court case unhelpful to the issue I've bothered with. I'm a jurisdiction fanatic. So if we send it back to the district court and we've held that you can't, you have to stay with C. And if N is a different crime, there's no power to go over to deal with N. And I'm having problems seeing how I'm going to get to the issue you really want to get to if the district court had no jurisdiction to get there. Okay. Well, if the court disagrees with Wegg, then that would eliminate our claim based on what we call 924-0. But it should not affect the ability of this Court to reach the other issues we've raised because it was set back for plenary resentencing. No. Not at all. Not at all. I'm only one-third, and I haven't made up my mind. But we put the question to you as precisely as we can because we want your best answer. Well, my best answer, I suppose, would be it was sent back for plenary resentencing. And so the fact that the ---- Let me stop you right there. Maybe I'm coming at it from a different angle. But we affirm on 924-C, your argument is you have to sentence under a different provision. Do you have any case that says under those circumstances the district court has the power to sentence under a different provision? Okay. Just to be clear, Your Honor, that was only one of our arguments. And ---- I know. We're asking you to talk about it. Okay. And so ---- No, I mean, I just ---- The only ---- Am I getting what you want, Cliff, on this, I think? I mean, we're just interested in your answer to that question. And my answer is simply the only case we found that's raised this. Well, nobody before us, I don't believe, has raised the issue of whether a court can impose 924-O sentencing on a 924-C conviction. We relied on WEG for analogous reasoning that seems to us to apply to this situation. Okay. So ---- And you just want to rest on that. I wish I could present other authorities. Well, no, I'm just ---- Or logic, why you think it ought to. I mean, if it's an open question in our circuit, we've got to address it. So ---- I certainly believe that with respect to 924-C and 924-O. Okay. But I've already used far more than my time. So I guess I'll give way to Mr. Osterhout and return for more. Okay. Good morning, Your Honor. I'm William Osterhout. I appear on behalf of the Appellant John Lewong. Your Honor, of the issues we have raised, I respectfully commend you your consideration. It's been fairly briefed, I think, and that's the issue of whether the finding of a jury of a single overall conviction can coexist with the manner in which the 924 issues were decided. But if we hear permission, and I know that's been fairly briefed, I'd like to concentrate briefly on the question of whether, in this case, it was necessary for the government to allege and the jury to find the second and subsequent violation of Section 924-C. That seems to us to be our position supported by United States v. Rodriguez-Gonzalez, we believe, where I know that involved immigration case where the second and subsequent case was an illegal entry. But the holding, I think, is consistent with our claim here, namely that for the government to take advantage of the deal case, which says that you could have a second and subsequent 924 in the same case as you have the other beginning violation, the deal doesn't say anything about pleading. And what Rodriguez-Gonzalez, I think, stands for is that the government must plead, must plead a second and subsequent in order to have the 20-year, the advantage of a 20-year consecutive sentence for the one that's designated as a second and consecutive. In this case, that added 20 years to Mr. Long's sentence for the second, and 45 altogether, I think, for Mr. Chan, an enormous amount of time. And I think that under those circumstances, that should, and that's not an Apprendi argument. We do raise one of those. But Apprendi, I think, Amandaris-Torres remains the law, although it's certainly been drawn into question by Justice Thomas and others in the Shepherd case. But the fact is that it does remain the law, and we preserve it here. But the other argument, the second and subsequent argument, is different. And it's not inconsistent with Amandaris-Torres. And that is that the government was obligated to charge and present to the jury that there was a second and subsequent, a second or subsequent violation alleged, so that that could be specifically found. And I think that argument, I think, is a good argument and a solid argument, one that was made below. The government says that it's not several things. It said Diehl forecloses it. But we don't believe Diehl does that because it doesn't talk about pleading. All it says is that you can have both the first 924C and the second in the same indictment decided at the same time. It doesn't say, though, it doesn't address pleading at all, whereas Rodriguez-Gonzalez does do that. So I would respectfully urge upon the Court that you follow that case. Now, the government also says that we're different from, you know, Rodriguez-Gonzalez. In that case, the distinction drawn is that the first illegal entry was a misdemeanor. It was made a – the second was made a felony by virtue of the subsequent one. And in our case, as the government points out, these were all felonies, the 924C first, second, third, fourth, whatever. But there are distinctions. The first one is a Class D felony, and it's made into a Class D felony by the virtue of the second subsequent one. And that, I think, is a distinction because there are, in addition to additional time, greatly additional penalties for the second offense. Also, a Class B felony, there's differences regarding supervised release. When you get out, how much time you have to get on supervised release, what happens to you if you violate it. It's a different level of offense. And therefore, I think that for that reason, we're consistent with Rodriguez-Gonzalez. And I respectfully urge that the Court should remand on that ground. Thank you, Counsel. Thank you very much. Dennis Reardon for Appellant Hai Chi Luong. As the Court's aware, I've got an issue that's completely different than the other two defendants. I was watching a baseball game this week, and a runner going to first was called out because a runner on third who had been put out on a forced play grabbed the catcher by the ankle and pulled him. I've seen a lot of baseball. Well, I saw the play, and he just cuffed him, I think. He cuffed him. He cuffed him. Well, you may be ahead of me on this, Judge Thomas, but I've watched a lot of baseball games over the years. I had never seen that before. And I've reviewed a lot of records. I've never seen what occurred in this case before. That is, a judge in one district called upon to sentence a defendant on specific crimes that had a guideline range of 6 to 7 years or 6 to 7, I believe, sentenced him to 40 years and made clear that the reason that he was doing that extraordinary upward departure was that he did not trust a federal district judge in another district here in San Francisco to impose a sentence in a case, a completely different case that was not before the Sacramento judge, to impose a sentence that the Sacramento judge thought would be adequate in its totality to punish this defendant. And Judge Wallace just mentioned that he is a jurisdiction fanatic. I think it's jurisdictionally clearly inappropriate for a judge to call upon to sentence in a particular case with particular offenses to impose sentence based on his belief that another judge will not punish adequately in a completely different case over which the first judge has no jurisdiction. Now, the government has argued that there is an appeal pending in this circuit from the imposition of the 40-year sentence by Judge Shub. And that's true. I checked in on it today. The briefing is still going on. And the government's argument is that if there is anything defective or wrong or offensive about Judge Shub's sentence, the appropriate place to raise those defects is in the appeal from Judge Shub's sentence. The one problem with that is that whatever other defects there are with what Judge Shub did, and I think there are a number, he did not double sentence this defendant for the use of a gun in the San Francisco case. I think the record fairly supports, by more than a preponderance of the evidence, the fact that Judge Shub imposed a sentence that was meant to punish a defendant, Luong, for the use of a gun in the San Francisco case. But how do you get to that point? I was looking for that very issue when I reviewed this case, and I couldn't find anything in the record, the sentencing record of Judge Shub, that he did anything in his case involving money laundering that would interfere with the sentence that will take place in the other case. So specifically, where in the record do you have a statement by Judge Shub indicating that he's sentencing for something that is occurring in another district? Now, I know Judge Shub, and you do too, I suppose. He sometimes says some things off the hand in humor or otherwise, but I would hesitate to go any further with that argument unless I had read it specifically. And frankly, I read it, and I couldn't find it. So could you cite to me the record where Judge Shub indicated that he was going to penalize people for anything other than a money laundering case? Where would I find that? Well, let me answer the question this way, Your Honor, with a concession. Judge Patel said that Judge Shub did not say that he was imposing any part of that sentence because of the gun charge, and for that reason she could not find a double imposition of sentence. Right. And I will concede that if an explicit statement that he is relying on the gun enhancement to impose his 40-year sentence were required, we lose. What Judge Shub did say was, referring to the sentencing before him, maybe something will happen. I don't know that he's going to be sentenced for the robbery. I can't just sentence him to 30 days for spending the money, the money laundering, and then find out that Judge Patel says something else and he doesn't get any time for the robbery. He goes on, we don't know what San Francisco is going to give, so we have to sentence in accordance with what we think the defendant ought to receive. Okay. What's the citation to that? Those citations in the E.R. are at E.R. 3738 for the first one and E.R. 53. And on our brief at page 19, Your Honor, we cite those two statements by Judge Shub. Okay. Now, what is there about that statement that we could say, write an opinion saying, there's double jeopardy here because there are two judges sentencing for the same act? Well, Your Honor, I would submit, you asked me how I would frame this. I would say the following, that the record indicates that Judge Shub's sentence strongly indicates, supports a factual finding, that Judge Shub's sentence in the Sacramento case was not based simply on the offenses before him, but on his perception of what Judge Patel would sentence, that Judge Patel said that nothing short of a statement that Judge Shub was giving five years for the gun case could preclude her from imposing five additional years. And, Your Honor, I submit that what the case, the remedy should be is to remand it for Judge Patel with directions that if she were to make a factual finding based on the entirety of the record, that even absent such an explicit statement, that Judge Shub's sentence necessarily can be explained only by the imposition of time of essentially the 25 years that she's given, including the five-year enhancement, then she is not only entitled but required not to give the five years because they've been given already. I think she used the wrong legal standard by saying nothing short of an explicit statement would justify this. We are in a situation where the following extraordinary facts are true. A guideline range of 6 or 7 years. The prosecution says we want a much tougher sentence, Your Honor. We want 20 years. And Judge Shub virtually castigates the government for not asking for 40 years as opposed to 20 years in a guideline case where there's 6 to 7 years. So I find that in the record where he's told about the prosecutor? Yes. Yes. The prosecutor says, Your Honor, we want 20 years. And he says, 20 years? Why don't you ask for concurrent sentences on each of them? He says 20 years is the maximum, Your Honor. And he says, no, it's the maximum on each count. Why don't you ask for consecutive sentences so I can get it up to 40 years? And the prosecutor says, well, I didn't think that was appropriate, basically saying because that's San Francisco's problem. But, Judge Shub, if you're willing to consider that, then we'd be delighted with it. So and the sentences, that colloquy is cited in our brief at pages 15, 16, and 17. All right. But so if you win on your appeal from a separate appeal, where does that leave Judge Patel? Let's say you get a reversal on the sentence imposed by Judge Shub. Well, I. It is an I. It is being represented by separate counsel. Right. But I mean you generically. Right. If your client prevails on that, then there's no double counting in this sentence, right? That would be correct. Yeah. So the government's correct in its assertion that really it hinges on the resolution of the other case. As a timing proposition, because the other case has yet to be decided, that's true. So shouldn't your argument be let's wait and see what happens? I'm perfectly willing to accept that as the appropriate resolution of the question, Your Honor. Thank you. Thank you. We'll hear from the United States. Good morning. May it please the Court, my name is Rob Reese. I represent the United States in this appeal. The Ninth Circuit, as Your Honors have pointed out, has already affirmed all the convictions at issue here, including the 924C convictions. Therefore, the only possible way that the relief can be granted by this Court that is sought by the defense is for this Court to find that the 924C sentences imposed upon them are neither mandatory nor consecutive. And that's contrary to the plain language of the statute itself and contrary to binding authority interpreting those provisions. First, what's our standard of review with respect to their argument that they've been sentenced under O instead of C? Well, Your Honor, I believe that the standard of review is that that is that this particular panel cannot grant that relief because that would be breaking the law of the case. The law of the case now is. No, that's the legal argument. He's asking for the standard of review. Yeah. Well. How do we review the district court's decision to impose O rather than or C rather than O? Well, if it's framed as a legal matter, if that's a legal question, normally the standard of review would be de novo. But I believe that because of the law of the case that it's not de novo review. It's just simply no longer reviewable. But I believe it is a legal. No, I mean, law of the case is a prudential doctrine, and we try to follow it. But, I mean, we start with, I guess, de novo review of that issue. If it's deemed to be a legal matter, it would be de novo review. But then I guess if I misstated that by framing the prudential doctrine as. Let's jump to the next question. Judge Mills wanted to know the standard of review, and you said you don't get there because it's precluded. He just wanted to know what the standard of review is. Okay. Well, I thought of it as the standard of review. And if I'm mistaken on that, I apologize. Then I'm happy to deem it to be de novo. Okay. Well, let's get to the second question, then. Is it permissible for a district court to sentence under O or N, depending on the version, rather than C on remand? I don't believe they have the jurisdiction to do that. I would agree with Judge Wallace that they lack the jurisdiction to do that. And there is no case law. Well, let's say that there's no intervening court of appeals decision, even still. And so really the court of appeals decision doesn't make any difference, does it? Well, I think it adds on to your argument, but your central argument is if you're convicted under C, a district court can't sentence under O, right? Correct. The reason that I think that the Ninth Circuit's prior opinion is important is that, bottom line, I believe this is an argument by the defense basically attempting to relitigate the affirmance of their convictions, because that's essentially what they're attacking. That's why I pointed out the importance or emphasized the importance that this circuit has already upheld them. I can say with respect to the WEG opinion, I hope this is proper. Last night when I was preparing for this argument, I just checked to see whether the Ninth Circuit had ever cited WEG before. It wasn't. It didn't appear in Westlaw and it disagreed with or et cetera. And it has. And the Ninth Circuit was citing it as agreeing with a case that it rejected, which means that it appears to me that the Ninth Circuit has specifically rejected the reasoning in WEG. And, again, it's not – it wasn't obvious. It wasn't in the flag. What's the citation? I can give the cite is United States versus, and I'm going to try to pronounce this, Jarvuhi, that's J-A-R-V-O-U-H-E-Y, and that's 117 F3rd 440. It's a 1997 opinion. And they specifically cite WEG, and my understanding of what they were saying about WEG is that we reject this idea that gun dealers necessarily can only be convicted of misdemeanors. Did we refer to the Sixth and Eighth Circuit cases? Well, the specific case that is specifically being rejected is a district court case from the Eastern District of Virginia. Yeah. That's the WEB case, but there's a case from the Sixth Circuit, the Eighth Circuit, contrary to WEB, and I just wondered if we'd cited it. No. The case – there's two Eastern District of Virginia cases the Ninth Circuit discusses. One's called Percival, which they specifically reject, and then they cite WEG as being the same holding as Percival. So they don't mention any circuit court case, just two district court cases, both from the Eastern District of Virginia. So anyway, for what it's worth, I don't – I believe that the Ninth Circuit has already rejected that approach. But in any event, the defendants here were not gun dealers. They do not get – they're not of a class that would even receive special protection under the gun laws, which was – the whole theory of WEG was that the person was a licensed gun dealer and therefore enjoyed special protection under 924C or the entire gun laws. So is it true on this record that none of these defendants ever used, carried, or possessed a firearm? That is absolutely true, Your Honor. And it's true that they never – there's no evidence that they ordered or encouraged another to use, carry, or possess a firearm? Well, that I would disagree with. I believe that they – that part of the liability here is the causing liability that they supervised. I know. It's a Pickerton theory, but I mean, is there any direct evidence that they ordered? Well, I would submit that there was more than one theory by which the jury could convict, and it wasn't simply Pinkerton. Right. I'm not – I'm not talking theories. I just want to know if there's – I'm not trying to trick you. I just want to make sure that I've got the evidentiary record right. I mean, if I read the – and it's a long record, but I mean, if I understand their contention and you seem to concede that there's no factual evidence of either that they used, carried, or possessed, that they ordered or directed the firearm, use of the firearm, or they facilitated direct evidence of facilitation or carrying of a firearm, is that true? Well, if not, what's your best evidence or where can you point to the record where there's direct evidence? I'm not – consequences may or may not flow from that, but I just want to know what the state of the record is. I think I understand what Your Honor is getting at. I'm just trying to mentally think about the record. But there's no evidence that they were personally using the firearms. However, evidence was that they were heavily involved with these stick-up robberies, that they would celebrate for them after the robberies, that they would direct the casing of the joints before the robberies, that it was a long, long string of robberies at which firearms were used every single time. Right. So I think the evidence is at least inferential. Right. That's what I thought the state of the record was, although I confess I haven't. It's a big record. And I have to confess, I've done my best, but I wasn't a trial counsel either, and so I am not personally aware of, let's say, a wiretap conversation where John Thaddeau Long says, make sure you bring your gun, if that's what you're asking about. Well, there's some irony in the fact that the crime, the central crime for which they're convicted, carries much less of a sentence than these extra crimes for only which inferential evidence exists, wouldn't you say? Well, the reason that I would disagree with that being ironic or somehow inappropriate in these circumstances is that these guys were the bosses. They were directing other people to do this. They were profiting from these robbers. I think it would be strange indeed that the foot soldiers would go away for long periods of time, 20, 25 years, and the bosses who were in charge of the whole operation, who reaped the most benefits, would not be punished that way. But isn't that an argument for an upward departure on the main sentence? I'm just speaking theoretically here. I know your technical arguments on mandatory minimums, but as you step back and look at this and realize these are serious crimes, but it does seem to be a stitching together of a lot of components that Congress may not have intended to be joined together in this way. And maybe it makes sense in terms of your argument, which seems to underline this as the total sentence was appropriate anyway, but in another case might not be appropriate. Well, I would actually even respectfully disagree with that in terms of how Congress has structured it. The elements, the actus reus of 924-0 or N, whichever we call it, the actus reus is nothing more than an agreement. The act of that crime is committed by simply agreeing. If the police are able to stop the crime before its actual commission, then 924-0 or N has still been committed. The actus reus of 924-C is the use, carry, or possession and furtherance of an actual gun. The element of that crime, the actus reus, is the actual involvement of a firearm. And so in this case, that's what we have, the actual employment of firearms, not simply an actus reus of an agreement. So by whichever theory of liability we get there, that's what happened. And I think that's what Congress was attempting to penalize the strictest. And so again, just as the person who orders the hit is just as responsible for that murder, even they didn't pull the trigger, the defendants here who ordered these stick-up robberies and profited from it, even if they weren't specifically saying make sure you bring your gun, should suffer the same strict penalties that the people who actually carried the guns did because guns were actually carried. We're going to have to write an opinion sooner or later or a disposition of some type. And now that I've caused the confusion of whether it's N or O, I suppose we should know. My statute book, Your Honor, has O, but it's in italics. I don't know why exactly it's in italics. It may be. My statute ended with N. And so I couldn't find the O. But the N said what you said O says. It would be a silly opinion if we say it's either N or O and we never did find out. I think there's a different version of the statute. We can straighten that out. I think we may have straightened that out on our own. No. I think there's a different version of the issue than anybody cited so far. We'll sort it out. It's a result of West citation practices that you don't have to worry about. Okay. Well, in any event, I... We'll Google it. Okay. Maybe I should have. Now, on the charging grand jury and petty jury with a second or subsequent argument, let me be clear, I did make a pretty boneheaded mistake on that. I asserted that it was all Class A felonies, and here I was the one that realized that it was an old version of the statute. The defense is right on that issue. It does raise from a Class D to a Class B felon. Now, the only effect that I'm aware of that those classifications have in the federal law is an increase in supervised release of two years. The defendants aren't even challenging their imposition of supervised release, so I would submit that's a distinction without a difference. More importantly, the reason that I believe Diehl directly stands to foreclose that argument on both the charge and the Apprendi issue is that in Diehl, the Supreme Court was dealing with precisely this statute, 924C, and they said that conviction by a petty jury is sufficient for a second or subsequent to stack. If it's sufficient for a petty jury, it would seem to the government necessarily sufficient for the grand jury. Even if Diehl doesn't stand directly for that proposition, Almodoros-Torres forecloses the argument since if it wasn't necessary and necessarily implied in the grand jury and the petty jury's verdict, well, the judge is allowed to make facts about a person's criminal history and the jury, the jury, the petty jury or grand jury would not have to. Now, the only reason that the ---- that the judge would not have a judicially noticeable prior document. Well, that would only be in the modified categorical approach. Here, categorically, it's one is earlier in time than the other, even if it's a moment in time by charging or by jury verdict, and I think Diehl stands for that proposition. The Gonzales, Rodriguez-Gonzales case distinguished Almodoros-Torres only on the ground of the transformation from misdemeanor to felony. They recognized that Almodoros-Torres would otherwise foreclose this and that was the only way they distinguished Almodoros-Torres was the misdemeanor of the felony. I don't think there's any basis to distinguish Almodoros-Torres on the difference between a Class D and a Class B felony. I believe it applies equally to all felonies and I think that's actually, I would submit, that that's inherent in the Rodriguez-Gonzales case itself. They seem to suggest by that very term that all felonies would be treated differently. Do you know where the money laundering case is now? What's the status of it? My understanding is that it is, at the time that I wrote these briefs, it was currently in the process of being appealed to this Court and I accept the representations of the defense that it still is. It's on its way here. It's on its way here is my understanding. Now, the charge of double jeopardy, what's the position of government? Is that something that we take up in this case or whether it's something that's taken up in the appeal of the money laundering case or both? Well, Your Honor, I would submit that it must be taken up with in the other case. Judge Patel did nothing wrong by saying, this is the crime I have been told by the Ninth Circuit that I have to be sentenced on and so I'm following the law and I'm putting these extra five years as per the terms of that statute to claim error. What did she say about the money laundering case? She just said it's not my case. It's a different case. And I would also submit factually, although Judge Shub did mention robberies, he never mentioned firearms that I could find in the record and more importantly, the specified unlawful activities for that money laundering, those two money laundering counts, were the Centon and Zenon robberies. The 924C was premised in this case on a separate robbery, a Hawkins robbery. And so I think even factually, even if you take Judge Shub, every inference against him, it's still that he truly was intending to make these sentences apply for 924Cs. It would have been 924Cs arising out of robberies that was different than the one Judge Patel was sentencing on. But how do we meaningfully review that without having a decision on the other case? Well, I would submit, Your Honor. If we take their argument and we face value, it's double count. I mean, it's your sentence twice for the same crime. And I realize you're factual defense. But the question is, until that's resolved, it seems to me we're kind of flying blind. Well, I would submit, Your Honor, that if what Judge Shub did was improper, then Judge Patel did the right thing and it should be affirmed. If what Judge Shub did was improper, then that sentence would be reversed and this sentence would still stand. So no matter what happens in the Judge Shub case, whether it's affirmed or reversed, the end result for our case is that the sentence would stand. Well, let me posit another way. The other panel is going to have to consider that independently. They don't really care about what Judge Patel did. They can't. So if there's a double counting by Judge Patel, there's no remedy in the other case. Well, I would submit. In other words, what I'm saying is this. What Judge Shub may have done may not be reversible, but it might be factually the case, and I don't know this, that it is double counting for Judge Patel. If he said this, then I would feel differently about it. So another panel might well say, yeah, he said that, but that doesn't make any difference. Well, and you have a separate appeal with Judge Patel. My only question in raising all that, and I'm not discounting your factual arguments at all, is I'm just wondering whether we need to hold it or not. Well, I would just say that what I would submit on that is legally there's only one 924C at issue, and that's before Judge Patel. So it would not be – it's got to be counted somewhere. And so it's the only place it can possibly count jurisdictionally. Did Judge Patel say anything in the record other than it is not my case, I'm not going to deal with it? Well, she made comments about it. She said, I understand the argument you're making, and that does seem – I'm paraphrasing, obviously, but it does seem like a – Her end finding is I'm not going to deal with it. Her end finding is I have to sentence under the terms of 924C because that's the conviction in my case. So the only person that's made a comment that there may be a carryover is Judge Shub? That's the only error I can – I can possibly see arising out of this, and I'm not commenting on whether Judge Shub actually made an error, but that I can possibly foresee. Judge Patel has a 924C conviction in front of her. She's – it's been upheld by the Ninth Circuit, and by the plain language of that conviction, she has to give five years' consent. And she did. True, but she also said, look, if Judge Shub had said this explicitly, I would have to act differently. And a panel of this Court might well say, well, that's what the legal effect was and that's what he meant. Carrying that out, then if she – she might have imposed a different sentence. And if that's the case, I don't know where that leads us. Well, I don't think she quite said that. What I – what I recall her saying was regardless of what he did, whether it's right or wrong. Right. She said at the end of the day. And then she said, well, the circuit will have to sort that out. Now, here we are. Well, the circuit will have to sort out Judge Shub. So you've got this one end. You're saying, no, no, you can't forget what Judge Shub did. And Judge Patel says, no, I have to forget. I can't deal with Judge Shub. Judge Shub, I don't – I'm worried about Judge Patel, but I'm going to sentence independently. And they say, let's have the circuit sort it. And you say, well, no, no, you don't need to coordinate this. I don't mean to be facetious, but I think we just have to decide whether we need to hold it or not. I understand that. And I will say the defendant here did not even notice the Judge Shub case as a related case to this. We don't think it's related either on the law. That's why we didn't do it ourselves. But it was noticed as a related case by the defendant. Okay. Panelists, does anyone have any other questions? I will submit and ask that your Honor's affirm.  Very good. We'll hear – give you each two minutes. Can you be efficient? Thank you, Your Honor. A few quick points. There was some talk about the propriety of the total sentence. Judge Patel didn't think it was appropriate. She said she was imposing a significantly higher sentence because of 924C than she would if she wasn't bound by them, number one. Number two, the prosecution keeps calling my client, Mr. Chen, a boss when Judge Patel rejected the boss enhancement and imposed the supervisory role enhancement. So, again, the district court disagrees with the representation the government's making before this Court. I would like an opportunity to submit a letter brief, if I could, to the new authority that was just cited for the first time about the jurisdictional issue. I just looked it up. It was a little beef, so. But why don't you give the citation to Ali afterwards? We have a little gum sheet for that. And if you need to do that, you can. Thank you, Your Honor. And, Your Honor, ask me first. I'm authority besides WEG. The first time around, I just was looking over my opening brief again, and I cited a case called United States v. Castillo-Felix, 539F2-9, decided in 1976. And I cited it for the proposition that, yes, the government can choose which statute it wants to charge under when conduct fits within the terms of either statute, but that the exception to that rule is when Congress has made clear which statute applies in a particular factual context. So that might be relevant to the whole WEG question. And finally, I wish the Court would just take a look at the Braverman claim, which is the one I wanted to discuss today. The first panel totally punted on it. They never addressed our arguments. And that's the real outrageous portion of what's happened here, is the government mistakenly and unlawfully divvied up an overarching conspiracy into these many conspiracies. And that's how they got their stacking. And it was improper from the get-go. So with that ---- Roberts. There are a lot of arguments that people didn't get to today, but we'll read them. Okay. Thank you, Your Honor. Did you want to ask him to cite that case to me? Yes, he's going to. He's going to get it. Thank you, Your Honor. With respect to the deal matter, I don't agree with the prosecution that that case is dispositive of the claim that the government had an obligation to allege, specifically the second and successive nature. What the Court held and agrees is that every ---- they relied on the historic principle every count must stand on its own, must be clearly established, and must be discernible and give notice on its own terms. And therefore, it's a simple matter of pleading, which the deal did not address in any way. Thank you, Counsel. Thank you. Very briefly, Your Honors, I did check the docket in the other appeal. The last entry was that the government had been given an extension of time to file the appellee's brief in the Sacramento case. But that could be a long time here. I mean, the panel might, if they're just getting briefing, you know, it's six months plus. Admittedly. It's a long time to hold a case. If it should have been listed as a related case, I'm not sure that I thought it met the formal standards. But if that was an oversight on my part ---- Well, let me ask you this. If, in fact, that case has an impact on or you believe it has an impact on the decision Judge Patel made, can't you make a 60-B motion? Thank you, Your Honor. Well, I mean, that would mean if you have a remedy with the district court, we may not need to hold it. Let me look at that. My question wasn't to give you advice. I just ---- I appreciate all the advice I can get, Your Honor. Finally, the government has sort of contended that this sentence, this 40-year sentence, was based solely on factors unique to the Sacramento case. I point out at the bottom of page 10 and 11 of our brief, Judge Shub says, why are you only asking for a total of 240 months, 20 years? And the government says, why don't you ---- and the judge says, how about a consecutive sentence, 40 years? And the AUSA says, well, I'm hoping that San Francisco will give a correct sentence. And Judge Shub says, well, we don't know what San Francisco is going to give. And Mr. Voss's counsel for the defendant objects to our waiting to see what San Francisco is going to give. So we have to sentence in accordance what we think the defendant ought to receive. I submit to you that those comments are absolutely irreconcilable with the notion that Judge Shub was seeking to impose a sentence that he thought was adequate simply for the Sacramento case, as opposed to attempting to ensure and usurp Judge Patel's function by sentencing on the basis of what he thought the defendant should get in the San Francisco case. And the problem is that whatever objections to Judge Shub may be raised in that appeal, a double jeopardy argument can't be raised because he admittedly was the first judge, in our view, to impose a sentence on the gun enhancement. Thank you. Well, it's an interesting case. I know you've spent a lot of time on it. We thank you all for your arguments and your presentations today. And we'll be in recess for the morning. Thank you.
judges: Mills, Wallace, Thomas